Miles D. Grant, Esq.  (SBN 89766)
Phillip A. Zunshine, Esq.  (SBN 339010)
**GRANT & KESSLER, APC**
1331 India Street
San Diego, CA 92101
Tel: 619-233-7078; Fax: 619-233-7036

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>RUDOLPH MEDINA<br>aka RUDY MEDINA<br><br>　　　　Debtor.<br><br>RONALD E. STADTMUELLER,<br>Chapter 7 Trustee<br><br>　　　　Plaintiff,<br><br>v.<br><br>BERNADETTE SARKISIAN, an individual; JOHN SARKISIAN, an individual,<br><br>　　　　Defendants. | Case No. 3:22-cv-0994-BEN-SBC<br><br>**DEFENDANTS' EX PARTE APPLICATION TO QUASH SUBPOENAS ISSUED IN VIOLATION OF THE COURT'S ORDER**<br><br>Judge:　Hon. Steve B. Chu<br>Dept:　13B<br><br>NO HEARING REQUIRED PER CHAMBERS' RULES |

## INTRODUCTION

Plaintiff's counsel violated this Court's September 6, 2023 order and served unauthorized subpoenas on 21 third-parties ("Subject Subpoenas"). Plaintiff's counsel previously did the same thing in the underlying bankruptcy case and avoided sanctions only by entering into a settlement agreement.

Because Plaintiff had no right to serve the Subject Subpoenas and violated this Court's order, the Court should quash the subpoenas immediately.

# THIS IS NOT A DISCOVERY DISPUTE

This Application does not concern a discovery dispute. Discovery in this action was closed over *three years ago*. On September 6, Judge Benitez authorized Plaintiff to serve interrogatories on Defendants as part of a settlement agreement. Plaintiff violated Judge Benitez's order by serving subpoenas on third-parties. This is not a discovery dispute; it is an application to stop Plaintiff's violation of the order.

# STATEMENT OF RELEVANT FACTS

### A. The Settlement did not allow Plaintiff to serve subpoenas

Following a settlement conference ("SC"), the parties reached a global settlement ("Settlement") of this fraudulent conveyance case and the underlying judgment that RONALD E. STATDMUELLER, Chapter 7 Trustee ("Plaintiff") has against Defendant John Sarkisian ("John"). The terms of the Settlement were read into the record in open Court. The Settlement required John to identify his assets, and then allowed Plaintiff to conduct John's asset deposition. The Settlement did not require John to produce documents. Nor did the Settlement allow Plaintiff to serve written discovery on John, or serve third-parties with subpoenas. (Decl. Zunshine ¶5.)

As required by the Settlement, Defendants immediately provided a list of their assets and debts to the Trustee. (Decl. Zunshine ¶6.)

### B. The Court's subsequent order did not allow Plaintiff to serve subpoenas

Following Plaintiff's attempt to back out of the Settlement, the parties had several calls with Judge Berg. Though not part of the Settlement, Judge Berg ordered Defendants to provide additional information about their bank accounts and LLCs within three days. Defendants complied. Plaintiff did not request to serve written discovery on John or to serve subpoenas on third parties. (Decl. Zunshine ¶7.)

As provided in the Settlement, on August 23, 2023 Plaintiff conducted John's asset deposition, examining John for over four hours about Defendants' assets going back nearly 20 years, John's personal friends that he rides bikes with, and numerous

other questions that are entirely irrelevant to the Trustee's Judgment or confirming Defendants' assets. Nevertheless, John answered all of the Trustee's questions to show that the assets identified on the list are the only assets he owns. (Decl. Zunshine ¶8.)

Plaintiff continued to attempt to back out of the Settlement, which resulted in Defendants filing a motion to enforce the Settlement. (Decl. Zunshine ¶9.)

On September 6, 2023, the Court heard argument on the motion to enforce the Settlement. At the hearing, even though it was not part of the Settlement the Court authorized Plaintiff to serve written interrogatories on John. Plaintiff did not request, and the Court did not authorize Plaintiff, to serve subpoenas on third parties:

> THE COURT: I'm going to trial -- or vacate the current trial date. Here's what I'm going to do. Before I make an order on the motion, I'm going to reserve on the motion. I'll give you 30 days to send out interrogatories as a continuation of your judgment debtor exam. I'm going to treat it as if it has not yet been completed, which, by the way, is something I seem to recall having done when I was a lawyer, at some point in time, when I thought that I didn't have all the information that I didn't -- was entitled to is I'd say that I'm continuing the judgment debtor exam pending something else.
>
> So I'm going to assume that you're making that motion to me, because it was something that you understood was part of the terms of the initial -- of the initial settlement agreement. I'll give you 30 days to draft interrogatories to send to Mr. Sarkisian to sign under penalty of perjury to give you the information that you need that you think should have been included in the first list to you.
>
> And then I will allow you to take a second judgment debtor exam of him if you believe that the information that you get from the judgment -- I'm sorry -- from the interrogatories is not sufficient.
>
> And then after that, we will have a second hearing on whether or not I'm going to grant the motion for -- to enforce the settlement or whether I'm going to put the case back on calendar for trial.

> So you've got 30 days to send those out. And I'll give you 30 days thereafter. Well, how long do you [counsel for Defendants] think you're going to need to answer the interrogatories?
>
> MR. ZUNSHINE: Depends on -- are these interrogatories just like asking for answers or asking for documents, as well? Just –
>
> THE COURT: I would imagine documents.
>
> MR. ZUNSHINE: Okay.
>
> THE COURT: Might include documents like, you know, "Let me see your LLC incorporation documents"; right?
>
> MR. ZUNSHINE: If he's going to be asking for documents, I think I'd like to have 30 days to do it because some of the IRA documents are old.
>
> THE COURT: Good. So 30 days to send out the interrogatories. 30 days to file -- to give him an answer, and do a judgment debtor exam within 30 days after that.

(Decl. Zunshine ¶10, Exhibit 1 at pp.41:6-42:22.)

Following the hearing on September 6, the Court entered a minute confirming that Plaintiff could serve written discovery on Defendants:

> Minute Entry for proceedings held before Judge Roger T. Benitez: Motion Hearing held on 9/6/2023. The Court reserves ruling on motion and vacates 9/13/23 trial date. The Court further orders as follows: Plaintiff shall have 30 days to send discovery to Defendants; Defendants shall have 30 days to respond to discovery; Plaintiff shall have 30 days after Defendants answer to conduct a second Judgment-Debtor exam of John Sarkisian. (Court Reporter/ECR Abigail Torres). (Plaintiff Attorney William P. Fennell, Kenneth M. Fitzgerald). (Defendant Attorney Phillip A. Zunshine). (no document attached) (gxr)  (Decl. Zunshine ¶11; Docket No. 70.)

### C. Plaintiff's counsel served 21 subpoenas on third-parties

At 6:37 p.m. on October 5 (one day before the deadline to serve interrogatories on Defendants), Plaintiff's counsel provided Defendants with notice of the Subject Subpoenas, which were directed to the following third-parties: (1) Angarak dba

CamerEye, (2) Bank of Bennington, (3) Banner Bank, (4) Barclays Bank, (5) Berkshire Bank, (6) Charles Towne Holdings LLC, (7) Citibank, (8) Crown Summit Properties - Utah, Ltd., (9) E Trade Securities LLC, (10) Equity Trust, (11) Gilman Post, (12) Goldman Sachs Bank and Goldman Sachs & Co. LLC, (13) Greylock Federal Credit Union, (14) JPMorgan Chase Bank, N.A., (15) M Power Tech, (16) Mill River, (17) Oscar's Brewing Co, Inc., (18) Pittsfield Coop Bank, (19) Safer Sports, (20) Sarkisian Family Trust Dated July 19, 1995, and (21) Tabboo, LLC. Plaintiff did not meet and confer with Defendants about serving the Subject Subpoenas. The next day, Plaintiff advised that nearly all of the Subject Subpoenas had already been served. (Decl. Zunshine ¶12, Exhibits 3-24.)

**D. Plaintiff refused to withdraw the Subject Subpoenas**

Immediately after receiving notice of the Subject Subpoenas, Defendants' counsel attempted to meet and confer with Plaintiff to get him to voluntarily withdraw the unlawful subpoenas. Plaintiff refused, contending that "I disagree with your contention that the minute order of Judge Benitez on Sept 6, as limiting plaintiff's discovery to only propounding interrogatories upon your client" and that Plaintiff should be allowed to serve the Subject Subpoenas because "Trustee has not been able to obtain backup information directly from your client." (Decl. Zunshine ¶13, Exhibit 2.) This of course ignores the fact that when Plaintiff served the Subject Subpoenas, he had *not even attempted to obtain "backup information"* from Defendants, as he had not yet served the interrogatories that the Court's Order actually authorized. (See Docket No. 70.)

**E. Plaintiff previously served unauthorized subpoenas and avoided sanctions only by entering into a settlement agreement**

In October and November 2014, Plaintiff's counsel—without authorization—served six subpoenas in the underlying bankruptcy case seeking documents related to six individuals and entities, five of which were non-debtors. The subpoenas sought private papers involving numerous third-parties. In response to the subpoenas,

Plaintiff obtained over 11,000 pages of documents, including over 5,000 pages of financial documents of non-debtor parties, including non-party Carolyn Medina's ("Carolyn") tax returns, financial statements, loan applications, and schedules of assets. Plaintiff's counsel then disseminated the third-parties' private tax returns, financial statements, and schedules of assets without their permission. (Decl. Zunshine ¶14.)

When Carolyn discovered this, she filed a motion for Rule 45 sanctions. On July 6, 2015, Judge Taylor issued a tentative ruling on the motion, stating that Plaintiff's issuance of the subpoenas was unlawful and without justification:

> "The Trustee attempts to justify the improper subpoenas by describing the difficulties he had obtaining information from the Debtor. However, no amount of difficulty changes the fact that there was no legal authorization for the subpoenas. Further, there is no indication that the Trustee took the legal steps that were available to him such as seeking an order from the Court compelling Debtor's cooperation or seeking an order for production under Rule 2004.
> * * *
> The next issue is what, if any, other form of sanction should be imposed on the Trustee or counsel for issuing the illegal subpoenas. The Court is not inclined to accept the Trustee's characterization of this as an innocent mistake without an evidentiary hearing; state of mind is seldom appropriately found without testimony. At a minimum, It appears to the Court that Trustee's counsel, frustrated by an uncooperative debtor, issued these subpoenas and "were at least generally aware" that they were not legally warranted. **As experienced bankruptcy counsel, the Court finds it highly likely they knew subpoenas are limited to adversary proceeding, contested matters and Rule 2004**. But the Court emphasizes, as discussed in the Bash Back! case that sanctions under Civil Rule 45 require a bad faith finding only where the subpoena was properly issued; here it wasn't. (Decl. Zunshine ¶15, Exhibit 25.)

In response, the Trustee and Carolyn eventually entered into a settlement agreement, under which the Trustee agreed to settle *all claims* against Carolyn and her trust and not pursue any voidable transfers in exchange for Carolyn withdrawing the sanctions motion concerning the subpoenas. (Decl. Zunshine ¶16, Exhibit 26.)

# LEGAL AUTHORITY

### A. Plaintiff is not permitted to serve subpoenas in this action

This action began in 2018 as an adversary proceeding in the Bankruptcy Court, Case No. 12-13764, Adversary No. 18-90039. The discovery cut-off was September 10, 2019. The Pre-Trial Status Conference was scheduled for December 5, 2019. However, on October 17, 2019, the Bankruptcy Court granted Defendants' Motion for Summary Judgment, which resolved the case. Plaintiff appealed, the BAP reversed the granting of the MSJ, and the reference to the Bankruptcy Court was withdrawn so a jury trial could take place in this Court. Plaintiff has had no right to conduct discovery in this case since **September 2019**.

In sum, Plaintiff had no right to serve the Subject Subpoenas, unless this Court specifically authorized it.

### B. The Court did not authorize Plaintiff to serve the Subject Subpoenas, and Plaintiff never sought permission from anyone to serve them

As set forth above and in the accompanying Declaration of Phillip A. Zunshine, the original Settlement that was read into the record did not request or require Defendants to produce any underlying documents, like bank statements or deeds, concerning their assets. In subsequent calls with Judge Berg, Plaintiff argued that Defendants should turn over some documents concerning their assets, but Plaintiff never requested (and Judge Berg never authorized Plaintiff) to conduct written discovery or serve subpoenas on third parties.

At the September 6 hearing on the Motion to Enforce the Settlement, Plaintiff argued that he should be able to serve interrogatories on Defendants, and the Court permitted Plaintiff to serve written interrogatories and requests for production of documents *on Defendants*. Plaintiff never requested (and this Court never authorized Plaintiff) to serve subpoenas on third-parties.

At no point after the September 6 hearing did Plaintiff ever reach out to Defendants to discuss Plaintiff's desire to serve the Subject Subpoenas. Plaintiff did

not serve *any* written discovery before serving the Subject Subpoenas.  Plaintiff simply disregarded the Court's September 6 Order and decided that he could do whatever he pleased, just as he did in 2014.

The Court should not condone Plaintiff's repeated, blatant disregard for the law.

**C. Because Plaintiff had no right to serve the Subject Subpoenas, the Court should quash them**

"Subpoenas under Rule 45 are discovery, and must be utilized within the time period permitted for discovery in a case.  [CITATIONS including *Rice v. United States*, 164 F.R.D. 556, 558 (N.D. Okl. 1995) (subpoenas duces tecum for particular records, issued to third parties after close of discovery for purposes of discovering impeachment material, were quashed as improper attempt to engage in  discovery after designated time period)]; [CITATIONS].  *Integra Lifesciences I, Ltd. v. Merck KgaA*, 190 F.R.D. 556, 561-62 (S.D. Cal. 1999).

"[S]ubpoenas duces tecum issued after discovery deadlines should be quashed." *Cobb v. Rodriguez*, No. 3:13-cv-01353-BEN-JMA, 2016 U.S. Dist. LEXIS 102823, at *4 (S.D. Cal. Aug. 2, 2016), citing *Integra Lifesciences*, *supra*, 190 F.R.D. at 561-62.  See also *Essociate, Inc. v. Blue Whaler Invs., LLC*, No. CV 10-2107-JVS (MLGx), 2012 U.S. Dist. LEXIS 197277, at *7-8 (C.D. Cal. Apr. 12, 2012) [Court should quash subpoena when a party seeks "to improperly procure discovery from a nonparty that could have reasonably been obtained well before the discovery cut-off date" and fails to file "a motion to modify the scheduling order" or otherwise obtain permission from the Court].

The discovery cut-off in this case ran more than *three years ago*.  Plaintiff had numerous opportunities to request permission from the Court to serve subpoenas on third-parties, including most recently at the September 6 hearing.  Plaintiff failed to do so.  Plaintiff also failed to discuss the issue with Defendants, or seek permission from the Court to serve the Subject Subpoenas.  Instead, Plaintiff—again—simply

decided to ignore the Court's orders and the Federal Rules of Civil Procedure and do what he wanted.

**D. Ex parte relief is warranted so that the third-parties do not produce documents**

It cannot be disputed that Plaintiff had no right to serve the Subject Subpoenas. The discovery cut-off in this action passed more than three years ago, and this Court did not authorize Plaintiff to serve the Subject Subpoenas. The Court should quash the Subject Subpoenas.

However, if the Court waits to hear this motion in the regular course, it is likely that one or more of the third-parties will produce documents in response to the Subject Subpoenas, exactly as happened in 2014 regarding Carolyn's records. If that happens here, there would be no real remedy. The records sought have nothing to do with this action to set aside a transmutation agreement, and even if they did, given the Settlement, there is no trial at which to exclude any ill-gotten records.

The only way to ensure that the third-parties do not comply with the unlawful subpoenas is for the Court to quash them and order Plaintiff to serve the order on the third-parties and ensure they do not produce documents.

## CONCLUSION

Once again, Plaintiff has knowingly served unlawful subpoenas on third-parties. The Court should not condone this behavior, particularly from Plaintiff, who is not only a repeat offender, he is an officer of the Court and part of the public face of the bankruptcy system.

Because Plaintiff had no right to serve the Subject Subpoenas, the Court should immediately quash the subpoenas.

Dated: October 11, 2023                GRANT & KESSLER, APC

By: */s/ Phillip A. Zunshine*
Phillip A. Zunshine
Attorneys for Defendants

X:\Data\19-738\Z2- Trustee's Fraud Conveyance\C-Motions\Motion to Quash Subpoenas\P&A-01b.docx