# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD E. STADTMUELLER, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>BERNADETTE SARKISIAN, et. al.,<br><br>Defendants. | Case No.: 3:22-cv-00994-RBM-DTF<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. 107]**<br><br>**(2) SETTING STATUS CONFERENCE** |

On September 23, 2024, Plaintiff Ronald E. Stadtmueller, Chapter 7 Trustee for Rudy Medina, ("Plaintiff") filed a Motion for Summary Judgment ("MSJ"). (Doc. 107.) On October 9, 2024, Defendants John and Bernadette Sarkisian (collectively, "Defendants") filed an Opposition to Plaintiff's Motion ("Opposition"). (Doc. 115.) On October 16, 2024, Plaintiff filed a Reply to Defendants' Opposition ("Reply"). (Doc. 117.)

The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, Plaintiff's MSJ is **DENIED**.

///

///

# I. BACKGROUND

## A. Factual Background

### 1. The State Court Judgments

On May 15, 2013, the Superior Court of California, County of San Diego ("San Diego Superior Court") entered a Partial Judgment on Jury Verdict (the "Judgment")[1] in favor of Rudy Medina and against Defendant John Sarkisian for fraud (intentional misrepresentation), fraud (concealment), fraud (negligent misrepresentation), breach of fiduciary duty, breach of contract, and breach of the covenant of good faith and fair dealing for a total sum of $1,591,586. (Doc. 109-1 at 3–8, 25.) On March 2, 2016, following an appeal, the San Diego Superior Court entered a Modified Partial Judgment on Jury Verdict (the "Modified Judgment") in favor of Rudy Medina and against Defendant John Sarkisian for a total sum of $1,718,271.49, plus post-judgment interest. (Doc. 109-2 at 27.)

### 2. The Transmutation Agreement

On March 7, 2014, after the initial Judgment but before the Modified Judgment, Defendant John Sarkisian testified during a judgment debtor examination that he did not have a postnuptial agreement with Defendant Bernadette Sarkisian, other than a family trust. (Doc. 108-2 at 4.) Shortly thereafter, on March 31, 2014, Defendants John and Bernadette Sarkisian executed a Post Marital Transmutation Agreement ("Transmutation Agreement"). (Doc. 108-1 at 2.) The Transmutation Agreement provides, in pertinent part:

> 2.02. <u>Intent that Property Have a Separate Character</u>. The parties desire that all property that was owned by either of them on the date of marriage and

---

[1] In his Request for Judicial Notice in Support of Plaintiff's Motion for Summary Judgment ("RJN"), Plaintiff asks the Court to take judicial notice of the Judgment and the Modified Judgment pursuant to Federal Rule of Evidence 201. (Doc. 109 at 2.) The Court is permitted to take judicial notice of court filings. *See e.g., Collazo v. Fed. Nat. Mortg. Ass'n Corp.*, No. CV 13–00975 MMM (JPRx), 2013 WL 2317798, at *2 (C.D. Cal. May 28, 2013) (taking judicial notice of a superior court unlawful detainer judgment). Accordingly, Plaintiff's RJN is **GRANTED**.

> additional property of whatsoever nature and wheresoever located that comes to either of them from any source during their marriage from the effective date of this Agreement forward shall be and remain their respective separate property, except as otherwise provided in this Agreement. Any community or joint property of the parties, now in existence, shall be transmuted into the separate property of either John or Bernie as set forth on Exhibits "A" and "C" to this Agreement such that, on the effective date of this Agreement, there is no community property.

(Doc. 108-1 at 4–5.)

### 3. Bankruptcy Proceedings

On March 29, 2018, Plaintiff, Chapter 7 Trustee of the Bankruptcy Estate of *In re Rudolph Medina a.k.a. Rudy Medina* (Bankruptcy Case No. 12-13764-LT7), filed an adversary proceeding (Adversary No. 18-90039-LT) alleging that Defendants entered into the Transmutation Agreement for the purpose of evading Defendant John Sarkisian's creditors, including Plaintiff. (Bankruptcy Case No. 12-13764-LT7, Adversary No. 18-90039-LT, Doc. 1, ¶ 20.) Plaintiff asserted three claims for relief: (1) declaratory relief pursuant to 28 U.S.C. § 2201 and California Code of Civil Procedure § 1060, (2) satisfaction of creditor's suit pursuant to California Code of Civil Procedure §§ 708.210–708.290, and (3) avoidance and recovery of fraudulent transfers pursuant to California's Uniform Voidable Transactions Act ("UVTA"), *see* California Civil Code §§ 3439–3439.14.[2] (*Id.* ¶¶ 24–39.)

Before the close of discovery, the bankruptcy court ruled "that the Transmutation Agreement was a transfer for the purposes of the UVTA" and denied the Parties' respective

---

[2] "The UVTA is a relatively new statute with ancient roots. The UVTA, adopted in California in 2015 and effective January 1, 2016, is a renamed and slightly revised version of the Uniform Fraudulent Transfers Act ('UFTA'), which California enacted in 1986. The UFTA replaced the Uniform Fraudulent Conveyances Act ('UFCA'), which was adopted in California in 1939. The provisions of UVTA, UFTA, and UFCA that are relevant to this appeal are identical in substance." *In re Medina*, 619 B.R. 236, 241 n.4 (B.A.P. 9th Cir. 2020).

motions for summary judgment. (Bankruptcy Case No. 12-13764-LT7, Adversary No. 18-90039-LT, Doc. 41 at 13.) After the close of discovery, the bankruptcy court granted summary judgment in favor of Defendants, finding that there was a "cushion" to satisfy the Modified Judgment and, therefore, that there was no injury to Plaintiff. (Bankruptcy Case No. 12-13764-LT7, Adversary No. 18-90039-LT, Doc. 66 at 50–55.)

On appeal, the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") reversed the bankruptcy court's injury ruling and remanded the case to the bankruptcy court for further litigation. *In re Medina*, 619 B.R. at 248. Specifically, the BAP found:

> "[U]nder the plain language of the statute, [Plaintiff] had to prove only three things: that the Transmutation Agreement operated as a (1) 'transfer' of an (2) 'asset' … (3) 'made … with actual intent to hinder, delay, or defraud any creditor of the debtor.' No statutory language supports a requirement that the plaintiff prove damages or actual injury or that the debtor's remaining assets after the transfer were insufficient to satisfy the debt without undue burden."

*Id.* at 241–42. The Ninth Circuit Court of Appeals affirmed. *See In re Medina*, No. 20-60045, 2021 WL 3214757, at *2 (9th Cir. July 29, 2021) ("[T]he BAP correctly concluded that the bankruptcy court erred by finding that Trustee's failure to provide evidence of a specific injury entitled the Sarkisians to summary judgment, since no such evidence was required.").

### 4. District Court Proceedings

On July 7, 2022, Defendants commenced the present District Court action by filing an unopposed Motion to Withdraw the Reference to the Bankruptcy Court, in which Defendants stated that this case was "certified as ready for trial." (Doc. 1 at 3; *see also* Doc. 3.) On October 18, 2022, the Honorable Robert S. Huie granted Defendants' Motion to Withdraw the Reference, finding that "[e]fficiency and uniformity dictate holding a single trial that will dispose of all claims by Plaintiff against both Defendants."[3] (Doc. 4

---

[3] Judge Huie recused himself on November 23, 2023, and this case was reassigned to the Honorable Roger T. Benitez. (Doc. 9.)

at 3.) The Court also set a status conference and ordered the parties to "meet and confer and come prepared to discuss proposed dates for (i) the final pre-trial conference, (ii) motions in limine, and (iii) trial." (*Id.*)

On August 26, 2024, despite reservations about the appropriateness of the issue for summary judgment, Judge Benitez granted Plaintiff leave to file a motion for summary judgment on the issue of intent. (*See* Doc. 104 at 90–98.) Shortly thereafter, the matter was transferred to the undersigned. (Doc. 103.)

**B.    Plaintiff's MSJ**

In his MSJ, Plaintiff asserts, and Defendants do not dispute, that the only element at issue in this case is Defendants' intent, i.e., whether Defendants entered into the Transmutation Agreement with the intent to "hinder, delay, or defraud" creditors. (Doc. 107 at 5, 8, 20.) Plaintiff then argues that the Transmutation Agreement is voidable because Defendant John Sarkisian made the transfer with the intent to hinder, delay, or defraud creditors. (*Id.* at 14–19.) Specifically, Plaintiff argues that six statutory "badges of fraud" are present: (1) that the transfer was to an insider, Defendant Bernadette Sarkisian; (2) that Defendant John Sarkisian retained possession and control of the transferred property despite the transfer; (3) that the transfer was made after Defendant John Sarkisian had been successfully sued; (4) that Defendant John Sarkisian removed or concealed assets; (5) that the transfer occurred in conjunction with the incurrence of substantial debt, the initial Judgment; and (6) that the transfer was concealed. (*Id.* at 16–19.)

Plaintiff also argues that additional circumstances support a finding of actual intent to hinder, delay, or defraud Plaintiff. (*Id.* at 19–20.) Plaintiff reminds the Court that the underlying Modified Judgment was entered against Defendant John Sarkisian for fraud and that, throughout the course of this litigation, Defendant John Sarkisian has concealed assets and hindered his creditors in bad faith. (*Id.* at 19.) Plaintiff also asserts that Defendant John Sarkisian admitted during his August 23, 2023 judgment debtor examination that he avoided making money so that his creditors could not attach it. (*Id.* at 20.)

**C.    Defendants' Opposition**

Defendants assert that Plaintiff has not met his burden to show that Defendant John Sarkisian intended to hinder, delay, or defraud his creditors when executing the Transmutation Agreement. (Doc. 115 at 12–13.) In the Declaration of John Sarkisian in Opposition to Plaintiff's Motion for Summary Judgment ("J. Sarkisian Decl."), Defendant John Sarkisian declares that he is a "serial entrepreneur" and that he and his wife transmuted their assets "so that if [he] did a deal in the future that went badly, [his] wife would not lose her 50% share of [their] assets." (J. Sarkisian Decl. [Doc. 115-1] ¶¶ 2, 8–9.) Defendant John Sarkisian also declares that he viewed the Transmutation Agreement as akin to other estate planning devices, like a will or a trust, and not as a "transfer." (*Id.* ¶ 9.) Finally, Defendant John Sarkisian declares that, at the time he signed the Transmutation Agreement, he thought his 50% share of the community property was sufficient to pay the initial Judgment in full.[4] (*Id.* ¶ 11.)

## II.   LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fortune Dynamic*, 618

---

[4] As set forth below (*see* Section III), there is a genuine dispute of material fact regarding Defendants' intent, precluding summary. Therefore, the Court need not summarize or address Defendants' defenses, e.g., whether Defendant Bernadette Sarkisian was a good-faith transferee that provided reasonably equivalent value (Doc. 115 at 16–19) or whether Plaintiff is entitled to a money judgment (*id.* at 19–20). The Court also need not address any argument pertaining to Plaintiff's remaining claims, which Plaintiff concedes turn "on the question of whether or not the Transmutation Agreement was made with the intent to hinder or delay creditors." (Doc. 107 at 20.)

F.3d at 1031 (internal quotation marks and citations omitted); *accord Anderson*, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. To carry its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Jones v. Williams*, 791 F.3d 1023, 1030–31 (9th Cir. 2015) (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). Once the moving party has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file," to show that a genuine issue of disputed fact remains. *Celotex Corp.*, 477 U.S. at 324; *T.W. Elec. Serv.*, 809 F.2d at 630 (citations omitted). The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation omitted).

When ruling on a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

"[T]he district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature. However, a self-serving declaration does not always create a genuine issue of material fact for summary judgment: The district court can disregard a self-serving declaration that states only conclusions and not facts that would

be admissible evidence." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (citing *SEC v. Phan*, 500 F.3d 895, 909 (9th Cir.2007)) (additional citations omitted).

"Summary judgment is generally inappropriate when mental state is an issue, unless no reasonable inference supports the adverse party's claim." *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1436 (9th Cir. 1984) (citing *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298–99 (9th Cir.1982)); *see also In re O'Gorman*, 115 F.4th 1047, 1058 (9th Cir. 2024) ("Questions involving a person's state of mind … are generally factual issues inappropriate for resolution by summary judgment.") (internal quotation omitted).

### III.  DISCUSSION

Under California's UVTA, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor … if the debtor made the transfer or incurred the obligation as follows: With actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1) (numbers omitted).[5]  Plaintiff asserts, and Defendants do not dispute, that the only element at issue here is whether Defendants intended "to hinder, delay, or defraud any creditor" when they entered the Transmutation Agreement. (Doc. 107 at 5, 8, 20.)  Therefore, the Court's analysis is limited to this element.

"Whether there is actual intent to hinder, delay, or defraud under U[V]TA is a *question of fact* to be determined by a preponderance of evidence." *In re Beverly*, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007) (citations omitted) (emphasis added); *see also United States v. Boyce*, 38 F. Supp. 3d 1135, 1156 (C.D. Cal. 2014) (same); *In re Still*, 393 B.R. 896, 917 (Bankr. C.D. Cal. 2008) (same); *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1187 (C.D. Cal. 2016) (same).  "[T]he determination typically is made inferentially from circumstances consistent with the requisite intent." *In re Beverly*, 374

---

[5] The UVTA is similar in form to the Bankruptcy Code's fraudulent transfers provisions; therefore, "cases analyzing the Bankruptcy Code provisions are persuasive authority." *In re AFI Holding, Inc.*, 525 F.3d 700, 703 (9th Cir. 2008).

B.R. at 235 (citation omitted); *see also In re Still*, 393 B.R. at 917 ("'[P]roof often consists of inferences from the circumstances surrounding the transfer.'") (quoting *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834 (2005)).

The "U[V]TA lists eleven nonexclusive factors that historically … have been regarded as circumstantial 'badges of fraud' that are probative of intent." *Id.* (citing Cal. Civ. Code § 3439.04(b)). They are:

> (1) Whether the transfer or obligation was to an insider.
>
> (2) Whether the debtor retained possession or control of the property transferred after the transfer.
>
> (3) Whether the transfer or obligation was disclosed or concealed.
>
> (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
>
> (5) Whether the transfer was of substantially all the debtor's assets.
>
> (6) Whether the debtor absconded.
>
> (7) Whether the debtor removed or concealed assets.
>
> (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
>
> (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
>
> (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
>
> (11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b)(1)–(11). "The U[V]TA list of 'badges of fraud' provides neither a counting rule, nor a mathematical formula. No minimum number of factors tips the scales toward actual intent." *In re Beverly*, 374 B.R. at 236.

The Court finds that there is a genuine dispute of material fact as to whether Defendants entered the Transmutation Agreement "[w]ith actual intent to hinder, delay, or defraud" Plaintiff. Cal. Civ. Code § 3439.04(a)(1). While certain badges of fraud may be present (*see* Doc. 107 at 16–19) and additional circumstances may support a finding of fraud (*see id.* at 19–20), Defendants have presented sufficient evidence to withstand summary judgment. For example, Defendant John Sarkisian declares that, at the time he signed the Transmutation Agreement, he believed his 50% share of the community property was sufficient to pay the initial Judgment in full. (J. Sarkisian Decl. [Doc. 115-1] ¶ 11.) While Defendant John Sarkisian's declaration alone may not create a genuine issue of material fact, *see Nigro*, 784 F.3d at 497, Defendant John Sarkisian's declaration is also supported by Exhibit "A" to the Transmutation Agreement, which lists Defendant John Sarkisian's Separate Property.[6] (Transmutation Agreement [Doc. 108-1] at 20.) Exhibit "A" identifies a minimum of $3,796,000 in separate property belonging to Defendant John Sarkisian. (*See id.* ¶¶ 3–10.) At the time, this amount was sufficient to satisfy the initial Judgment for $1,591,586, undermining any assertion that Defendant John Sarkisian intended to evade the Judgment. (*See* Doc. 109-1 at 3–8, 25.) Further, Defendant John Sarkisian declared that he entered the Transmutation Agreement "so that if [he] did a deal in the future that went badly, [his] wife would not lose her 50% share of [their] assets." (J. Sarkisian Decl. [Doc. 115-1] ¶¶ 8–9.) A jury could find this explanation compelling.

Accordingly, the Court finds that there is a genuine issue of material fact as to whether Defendants entered the Transmutation Agreement "[w]ith actual intent to hinder,

---

[6] The Court is not persuaded by Defendants' attempt to dispute the authenticity of the Transmutation Agreement. In opposing Plaintiff's MSJ, Defendant John Sarkisian himself declared, "I executed the Transmutation Agreement." (J. Sarkisian Decl. [Doc. 115-1] ¶ 11.) The Court need not address Defendants' remaining authenticity arguments (*see* Doc. 115 at 10–11), as the Court does not rely on Defendants' deposition testimony in making its decision.

delay, or defraud" Plaintiff, precluding summary judgment. Cal. Civ. Code § 3439.04(a)(1); *see also* Fed. R. Civ. P. 56(a); *Celotex Corp*, 477 U.S. at 322.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff's MSJ is **DENIED**. The Court also **ORDERS** the Parties to meet and confer regarding proposed dates for the final pre-trial conference and trial and appear for a **status conference** on **Thursday, June 5, 2025 at 1:30 p.m.**. This case shall proceed without further delay given the age of the dispute.

**IT IS SO ORDERED.**

DATE:  May 12, 2025

*[Signature]*
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE